The TOWN OF LUTHER, Oklahoma, a municipal corporation, and the Town of Jones, Oklahoma, a municipal corporation, Plaintiffs in Error,

v.

The STATE of Oklahoma ex rel. James H. HARROD, County Attorney of Oklahoma County, Oklahoma, and the City of Oklahoma City, Oklahoma, a municipal corporation, Defendants in Error.

No. 41322.

Supreme Court of Oklahoma.

Feb. 28, 1967.

As Corrected April 10, 1967.

Willis R. Stark, Jones, for plaintiffs in error.

Walter M. Powell, Asst. Municipal Counselor, William F. Collins, Jr. and Keith McMillin, Sp. Asst. Municipal Counselors of City of Oklahoma City, and Granville Scanland, Asst. County Atty. of Oklahoma County, Oklahoma City, for defendants in error.

McINERNEY, Justice.

This litigation involves the validity of ordinances enacted by the City of Oklahoma City, the Town of Jones and the Town of Luther annexing certain tracts of land to the respective municipalities. The State of Oklahoma ex rel. Oklahoma County filed two quo warranto actions for the purpose of adjudicating the validity of the ordinance enacted by the above named municipalities. There is no overlapping between the territory annexed by the Towns of Jones and Luther, but overlapping exists between the territory annexed by each of these towns and the territory annexed by the City of Oklahoma City. For convenience, the City of Oklahoma City will be hereinafter referred to as "Oklahoma City", the Town of Jones as "Jones", and the Town of Luther as "Luther". A total of six cases were filed in the District Court of Oklahoma County involving various phases of this litigation. One case was dismissed. The remaining five cases by agreement of the parties were consolidated for trial under Cause No. 164131, District Court of Oklahoma County, which is one of the quo warranto actions filed by the State ex rel. Oklahoma County.

The consolidated cases were tried on September 8 and 9, 1964. The court entered a judgment holding the annexation ordinances of Jones and Luther invalid and sustaining the validity of the annexation ordinances of Oklahoma City. Jones and Luther appeal.

The Town of Jones by action of its Board of Trustees on August 6, 1963, enacted Ordinance 74, annexing approximately 15,020 acres of land adjacent to its corporate limits.

The Town of Luther by action of its Board of Trustees on November 30, 1963, enacted Ordinance 60, annexing approximately 8,640 acres of land adjacent to its corporate limits.

The City of Oklahoma City on November 5, 1963, by action of city council enacted Ordinances 10,338, 10,339, 10,340 and 10,341, annexing the same territory previously annexed by the Town of Jones and on March 17, 1964, enacted Ordinances 10,443 and 10,444 annexing the same territory previously annexed by the Town of Luther.

In enacting Ordinances 74 and 60, the Towns of Jones and Luther proceeded under the provisions of Title 11 O.S.1961, § 481, which reads:

"Authority to change city limits—Consent of owners—Certain tracts not subject to city taxes.

"The city council, in its discretion, may add to the city such other territory adjacent to the city limits as it may deem proper, and shall have power to increase or diminish the city limits in such manner as in its judgment and discretion, may redound to the benefit of the city: Provided, that in no case shall any additional territory, except when subdivided into tracts or parcels of less than five acres with more than one residence thereon, be added to the city limits without the consent in writing of the owners of a majority of the whole number of acres owned by residents of the territory to be added, except that when three sides of such additional territory is adjacent to, or abutting on, property already within the city limits, such territory may be added to the city limits without the consent hereinbefore mentioned: * * *."

During the trial counsel for Jones and Luther repeatedly stated that they were relying solely on the provisions of § 481, supra. Section 2 of Ordinances 74 and 60 state that a majority of the owners of the whole number of acres have given their written consent to the annexation. The statement in each ordinance follows closely the language of § 481, supra.

Jones and Luther are "towns" as distinguished from "charter cities". The pleadings filed by Jones and Luther refer to these parties as "Towns". The caption of the Jones Ordinance reads "An ordinance extending the corporate limits of the *Town of Jones*" and "Be it ordained by the Board of Trustees of the *Town of Jones*".

Similar wording is contained in the Luther Ordinance referring to the *"Town of Luther"*. (Emphasis ours.)

■ Both Jones and Luther have a Board of Trustees and a Town Clerk, positions created by §§ 1001 and 1028 respectively of Part III, Towns, Chapters 19 through 22 of Title 11 O.S.1961. Section 481, supra, is not applicable to towns, and both Jones and Luther were towns at the time the ordinances were adopted. City of Maud v. Tulsa Rig, Reel & Mfg. Co., 165 Okl. 181, 25 P.2d 792, 793.

The trial court held the Jones Ordinance 74 and the Luther Ordinance 60 invalid as a matter of law for the reason that the ordinances were enacted under the wrong Oklahoma Statute. We agree.

The trial court also determined that Jones and Luther did not have "the consent in writing of the owners of a majority of the whole number of acres owned by residents of the territory to be added" as required by § 481, supra.

On appeal, Jones and Luther attempt to change the position and theory presented in the trial court. While normally this departure is not permitted, Merkle v. Yarbough, Okl., 378 P.2d 333; Chrysler Corporation v. Walter E. Allen, Inc., Okl., 375 P.2d 878, in view of the possible interest to various cities and towns, the new contention that the land was annexed in conformity with 11 O.S.1961, § 482 will be discussed briefly. This statute, one of the two authorizing towns to annex adjoining lands, reads as follows:

"Annexation on petition of three-fourths of voters and property owners.

"On petition in writing signed by not less than three-fourths of the legal voters and by the owners of not less than three-fourths (in value) of the property in any territory contiguous to any incorporated city or town and not embraced within the limits thereof, the city council of the city or the board of trustees of the town, as the case may be, shall by ordinance annex such territory to such city or town upon filing a copy of such ordinance with an accurate map of the territory annexed (duly certified by the mayor of the city or the president of the board of trustees of the town), in the office of the register of deeds of the county where the annexed territory or the greater portion of it is situated, and having the same recorded therein."

■ The evidence discloses that three-fourths of the voters and property owners did not sign the petition.

The second statute is Title 11 O.S.1961, § 1043, but no attempt was made by either Jones or Luther to comply with this section.

The trial court held that the evidence of Jones and Luther failed to establish a compliance with either § 481 or § 482, supra. The evidence is insufficient to establish that the Towns of Jones or Luther had secured the consent of the "owners of a majority" of the land sought to be annexed in compliance with the requirements of § 481, supra. Likewise the evidence failed to establish a compliance with § 482, supra, requiring the filing of "petition in writing signed by not less than three-fourths of the legal voters and by the owners of not less than three-fourths (in value) of the property" sought to be annexed. We agree with the findings of the trial court that the evidence is insufficient to establish the validity of Ordinances 74 and 60 under either § 481, supra, or § 482, supra.

We now turn to the question of the legality of the annexation ordinances of the City of Oklahoma City enacted under the provisions of § 481, supra.

The evidence establishes by the oral testimony of property owners that in the enactment of Ordinance 10,338 the written consent of the owners of 61.25% of the property involved was secured. These same property owners signed the annexation petition. Likewise in the enactment of Ordinance 10,443 the evidence by the oral testimony of property owners establishes the written consent of 69.63% of the owners of the property involved to the annexation of the property.

In the enactment of Ordinances 10,339, 10,340, 10,341 and 10,444 the City of Oklahoma City employed the method authorized by § 481, supra, which provides "that when three sides of such additional territory is adjacent to, or abutting on, property already within the city limits, such territory may be added to the city limits without the consent", of the owners of the land sought to be annexed.

The evidence is undisputed that with the enactment of Ordinance 10,338 the land involved in Ordinances 10,339, 10,340 and 10,341, the Jones area, was surrounded on three sides by the corporate limits of Oklahoma City, and the enactment of Ordinance 10,443 surrounded the Luther area on three sides and included the land involved in Ordinance 10,444, if Ordinances 10,338 and 10,443 were validly enacted.

Ordinance 10,338 was enacted by the City Council of the City of Oklahoma City on November 5, 1963. On the same date and at the same meeting of the City Council, Ordinances 10,339 and 10,340 were enacted. Ordinance 10,443 was enacted by the City Council of the City of Oklahoma City on March 17, 1964. On the same date and at the same meeting of the City Council, Ordinance 10,444 was enacted.

Jones and Luther contend that Ordinance 10,338 and Ordinance 10,443 did not become operative immediately upon their enactment and therefore did not constitute a predicate for the enactment of Ordinances 10,339, 10,340, 10,341 and 10,444, citing 11 O.S. 1961, § 579.2, and Chickasha Cotton Oil Co. v. Rogers, 160 Okl. 164, 16 P.2d 112.

The statute, § 579.2, supra, provides

"All ordinances duly passed by the legislative bodies of cities and towns except as otherwise provided in Section 2 hereof shall be published in a legal newspaper having general circulation in said city or town. Unless published or posted as required by law, same shall be null and void."

while § 579 preceding this statute provides, in part, that "no ordinance having any object beyond the bare appropriation of money shall be in force until published as herein provided".

The Charter of Oklahoma City, Art. II, § 24 provides:

*"Publication of Ordinance Adopted.* Every ordinance adopted shall be published once in a daily newspaper published and of general circulation in the City and shall not take effect until thirty days after such publication, except *emergency ordinances passed as provided for in this Article, which shall take effect upon passage and be so published on the following day* subject always to the provisions of the referendum; and provided further, that this section shall not apply to bond issues and special assessment ordinances, but such ordinances shall be governed by the provisions of the statutes of the State." (Emphasis ours.)

It is conceded that Ordinances 10,338 and 10,443, as well as the other ordinances enacted by the City of Oklahoma City, were legally published the day after their enactment and that each contained an emergency clause.

The annexation statute, § 481, supra, makes no provision for the publication of the ordinance annexing territory pursuant thereto. Oklahoma City proceeded under this statute, rather than a charter provision permitting annexation. There is no conflict involved here between the general law permitting annexation and the method employed by Oklahoma City. Oklahoma City proceeded pursuant to § 481, supra, the general law.

The conflict develops solely in the effective date of the published Ordinances 10,338 and 10,443. As we have noted above, § 481 is silent regarding the publication of an annexation ordinance. Jones and Luther take the position that § 579.2, supra, the general law relating to the publication of ordinances, prevails over Article II, § 24 of the Charter of Oklahoma City, the manner of publishing the ordinance employed by Oklahoma City. The critical

question to resolve is the determination of which publication section prevails.

 Oklahoma City has a charter adopted and approved in accordance with the Constitution of Oklahoma, Art. 18, § 3(a). 11 O.S.1961, § 564, in force and effect since 1910, provides, generally, that the provisions of a charter shall prevail when in conflict with any laws relating to cities and shall operate to repeal the state law to the extent of such conflict; provided that the charter shall be consistent with and subject to the Constitution and, specifically, the laws relating to the exercise of the initiative and referendum. There is no constitutional provision relating to the manner or time of publishing ordinances, or when an ordinance will take effect, in the Constitution, Article 18, Municipal Corporations. So there is no conflict between Art. II, § 24 of the Oklahoma City Charter and any constitutional provision. Further, the provisions of a city charter, adopted and approved in accordance with the Constitution, Art. 18, § 3(a), not in conflict with any constitutional provision, supersede all laws of the state in conflict therewith insofar as such laws relate to merely municipal matters. Goodwin v. Oklahoma City, 199 Okl. 26, 182 P.2d 762; Walton v. Donnelly, 83 Okl. 233, 201 P. 367.

· The charter provision of Oklahoma City, to the extent that the provision making an emergency ordinance take effect upon passage and before publication is in conflict with the general law relating to the publication of city ordinances, must prevail if the publication of city ordinances is merely a municipal matter. This Court said in Goodall v. City of Clinton, 196 Okl. 10, 161 P.2d 1011, 1014 that the manner of publishing city ordinances is a question of purely municipal concern, and it would follow that the effective time such an ordinance takes effect, if not prohibited or limited by the Constitution, would also be a matter of purely municipal concern. We are not concerned here with the acquiring of land by eminent domain as was present in Ramsey v. Leeper, 168 Okl. 43, 31 P.2d 852, cited by Jones and Luther. An ordinance enacted by the governing body of a charter city, pursuant to a charter provision providing for emergency ordinances to take effect upon passage, supersedes the requirement of § 579.2, supra, requiring publication of the ordinance before it becomes effective. Whitson v. City of Ada, 171 Okl. 491, 44 P.2d 829. Ordinances 10,-338 and 10,443 took effect immediately upon passage and before their publication the next day. Upon their taking effect, the area involved in Ordinances 10,339, 10,340, 10,341 (the Jones area) and 10,444 (the Luther area) was surrounded on three sides by the City of Oklahoma City. This area was then legally taken into the city limits of Oklahoma City, pursuant to § 481, supra, by the enactment of Ordinances 10,339, 10,340, 10,341 and 10,344.

 Jones and Luther complain that the territory annexed by Ordinances 10,338 and 10,443 is irregular in shape and was annexed under what is commonly known as the "strip" method of annexation. This method of annexing territory by a municipality has been approved by this court. Sharp v. Oklahoma City, 181 Okl. 425, 74 P.2d 383. For a discussion of the effect of an emergency ordinance under the provisions of a city charter and the validity of the "strip" method of annexation subsequent to the annexing of the "strip" by emergency ordinance, see Botsford v. City of Norman, C.C.A. 10, 354 F.2d 491, affirming 226 F.Supp. 255 (1964).

Jones and Luther cite Chickasha Cotton Oil Co. v. Rogers, 160 Okl. 164, 16 P.2d 112, to sustain their position that emergency ordinances do not become effective immediately upon passage. The case is distinguished from the present one. The Chickasha Cotton Oil Co. case, supra, did not involve a charter provision, and the holding in that case is not applicable to the facts in this case.

 Jones and Luther further contend that Ordinances 74 and 60 show on their face that the jurisdictional requirements

have been met and therefore their validity cannot be contested in these proceedings. This contention is without merit since this action was a direct attack by the State rather than a collateral attack by a private individual. Jones v. City of Oklahoma City, 207 Okl. 431, 250 P.2d 17.

The judgment of the trial court is affirmed.

All the Justices concur.