2001 OK 91

**CITY OF CLAREMORE, a municipal corporation, Plaintiff–Appellee,**

v.

**TOWN OF VERDIGRIS, a municipal corporation, Defendant– Appellant.**

No. 96,357.

Supreme Court of Oklahoma.

Oct. 16, 2001.

Rehearing Denied June 17, 2002.

Stratton Taylor, Mark H. Ramsey, and Toney Foster, Taylor, Burrage, Foster, Mallett, Downs, & Ramsey, Claremore, OK, for Plaintiff–Appellee.

Larry R. Steidley, Jr. and James W. Summerlin, Claremore, OK, for Defendant–Appellant.

## OPINION

WATT, Vice Chief Justice,

### FACTS AND PROCEDURAL BACKGROUND

¶ 1 Defendant–Appellant, Town of Verdigris, annexed fifteen parcels of unincorporated land in Rogers County in June 2000. Verdigris did so at the unanimous request of the landowners under 11 O.S.1991 §§ 21–105[1] and 21–114.[2] In May 2000 Verdigris had given notice to Plaintiff–Appellee, City of Claremore, of its intention to annex the property, in accordance with the requirements of

---

1. Title 11 O.S.1991 § 21–105 provides:

At least three-fourths of the registered voters and the owners of at least three-fourths (in value) of the property in any territory adjacent or contiguous to the municipality may request annexation by signing and filing a petition with the governing body of the municipality. The petitioners must give notice of the presentation of the petition by publication at least once each week for two (2) successive weeks in a newspaper of general circulation in the municipality where the petition has been presented. The municipality may pay the cost of the annexation proceedings. After the notice of the petition has been given, the governing body by ordinance may annex the territory to the municipality.

2. Title 11 O.S.1991 § 21–114 provides:

A. The majority of the owners of a subdivision or property owners located in unincorporated territory which is enclosed by the boundaries of a municipality may petition for annexation in writing to another municipality if:
1. The width of the boundary is less than two hundred (200) feet; and
2. The property is contiguous to the other municipality except for the boundary.
B. The governing body of the other municipality may grant the petition after notifying the enclosing municipality in writing at least thirty (30) days prior to adoption of the annexation ordinance. The boundary of the enclosing municipality shall recede to the extent of the annexation. The enclosing municipality at any time may reestablish its boundary within unincorporated territory enclosed by it on the effective date of this act. The enclosing municipality may bring an action in district court to invalidate the annexation. If the district court finds that the conditions for annexation exist and that the enclosing municipality has not demonstrated a substantial governmental interest in the use of the property, it shall uphold the annexation.
In 2001, the legislature amended § 21–114(A)(1) by reducing the maximum width of the boundary to "less than twenty (20) feet." This amendment, however, has no effect on our analysis of the statute set forth in this opinion.

§ 21–114(B). The facts concerning the landowners' petition, Verdigris's notice to Claremore, and Verdigris' annexation ordinance are undisputed.

¶ 2· Both Verdigris and Claremore were principally located more than a mile from the property covered by Verdigris' annexation ordinance. Claremore lies to the north and west, Verdigris to the south of the annexed property. Both Verdigris and Claremore, however, had incorporated into their corporate limits narrow strips of land that extended to the property Verdigris annexed. Verdigris's strip was fifty feet wide, Claremore's twenty feet. At the point of connection between Verdigris and the annexed property, Verdigris' strip and Claremore's strip ran east and west. An unincorporated thirty foot strip lay between the Verdigris and Claremore strips; Claremore's strip lay to the north of the unincorporated strip and Verdigris' lay to the south.

¶ 3 One of the fifteen tracts covered by Verdigris' annexation ordinance was bisected by the unincorporated thirty foot strip and by Claremore's twenty foot strip. Section 21–114(A) provides,

> The majority of the owners of a subdivision or property owners located in unincorporated territory which is enclosed by the boundaries of a municipality may petition for annexation in writing to another municipality if:
> 1. The width of the boundary is less than two hundred (200) feet; and
> 2. The property is contiguous to the other municipality except for the boundary.

All fifteen tracts abut and form one mass of land. The parties agree, and the trial court found, that Claremore is the municipality referred to in the phrase, "enclosed by the boundaries of a municipality" and that Verdigris is the "other municipality." Thus, under § 21–114(A)(2), Claremore's boundary shall be ignored in deciding whether Verdigris' corporate limits are contiguous to the annexed property. Verdigris contends that the

unincorporated thirty foot strip must be ignored, too, under 11 O.S.2001 § 21–102, which provides:

> Where any territory to be annexed is separated from the corporate limits of the municipality only by a railway right-of-way, or an intervening strip less than four (4) rods [66 feet] wide, or a highway right-of-way, the territory shall be considered adjacent or contiguous to the municipality.

Claremore argued that the unincorporated thirty foot strip prevented contiguity but the trial court rejected this argument.

¶ 4 Claremore brought suit against Verdigris under § 21–114. Claremore contended, and the trial court held, that the fifty foot wide strip connecting the corporate limits of Verdigris to the annexed territory did not qualify to make the annexed property "contiguous to the other municipality" within the meaning of § 21–114(A). For the reasons discussed in this opinion, we disagree.[3]

¶ 5 Claremore also contended that Verdigris should be estopped because it had relocated its strip as an accommodation to Verdigris to allow Verdigris to incorporate. It is undisputed, however, that Claremore incorporated its strip two years before Verdigris was incorporated and established its own strip.

¶ 6 In material part, § 21–114(B) provides:

> ... The enclosing municipality may bring an action in district court to invalidate the annexation. If the district court finds that the conditions for annexation exist and that the enclosing municipality has not demonstrated a substantial governmental interest in the use of the property, it shall uphold the annexation.

In a motion to dismiss Claremore's petition, Verdigris contended that the obligation imposed on the district court by § 21–114(B) to make a finding as to "substantial governmental interest" is unconstitutional. The trial court denied Verdigris' motion to dismiss. In its order granting Claremore's motion for

---

3. Verdigris later passed another annexation ordinance that included the property annexed under the annexation ordinance at issue here plus other land lying between what was formerly the main part of Verdigris and the land Verdigris annexed

under the first ordinance. Claremore also brought suit to attack that ordinance under § 21–114. None of the issues in that case are before us in this appeal.

summary judgment the trial court held that the "substantial governmental interest" clause was not before the court. The trial court so held based on its ruling that "the conditions for annexation" did not exist because Verdigris' corporate boundaries were not "contiguous" to the property sought to be annexed and the annexation can only be upheld under § 21–114(B) if both the "the conditions for annexation" requirement and the "substantial governmental interest" requirement are met. Because the trial court held that "the conditions for annexation" were not met, it reasoned that it need not address the constitutionality of the statute's "substantial governmental interest" clause.

¶ 7 Verdigris moved that the Court retain jurisdiction because the appeal involved matters of first impression. Claremore joined in Verdigris motion to retain and we granted the motion on June 15, 2001.

## ISSUES

¶ 8 This is a matter of first impression as we have not heretofore interpreted 11 O.S. 1991 § 21–114. Four issues are presented:

I.   Did Verdigris' fifty foot wide strip, which abuts the annexed property, make Verdigris "contiguous" to the annexed property under 11 O.S.1991 § 21–114(A)(2)?

II.  Did 11 O.S.1991 § 21–102 authorize Verdigris to annex the annexed property despite the intervening unincorporated thirty foot wide strip.

III. Did the requirement placed on the district court by § 21–114(B) to determine whether Claremore has "demonstrated a substantial governmental interest in the use of the property" unconstitutionally delegate to the courts the legislative power to determine whether Verdigris may annex property?

IV.  Is Verdigris entitled to add the annexed property to its corporate limits despite Claremore's contention that the doctrine of estoppel should be

held to prohibit Verdigris from doing so?

We answer "yes" to all four issues.

## DISCUSSION

### I.

*The undisputed facts in the record show that Verdigris' corporate limits are "contiguous" to the property sought to be annexed under 11 O.S.1991 § 21–114.*

■ ¶ 9 It is undisputed that Verdigris' fifty foot strip abutted the property that Verdigris annexed, and that the owners of the annexed property had petitioned Verdigris for annexation in accordance with §§ 21–105 and 21–114. Claremore, however, contended and the trial court held that because only Verdigris' fifty foot strip abutted the property Verdigris sought to annex, § 21–114's requirement that Verdigris' boundaries be "contiguous" to the property sought to be annexed had not been satisfied. Based on this conclusion, the trial court held that no showing had been made "that the conditions for annexation exist."

¶ 10 Section 21–114 was passed by the legislature in 1991. This Court has not heretofore interpreted it, although our cases interpreting other annexation statutes are instructive. We have approved the "strip" method of annexation on numerous occasions. We did so in *Town of Luther v. State*, 1967 OK 59 ¶ 28, 425 P.2d 986, in which we cited with approval *Botsford v. City of Norman*, 354 F.2d 491, 494 (10th Cir.1965). In *Botsford*, the City of Norman annexed a strip of land sixty-seven feet wide and fourteen miles long in order to add 112,000 acres of rural property in the watershed area of the Little River Reservoir to its corporate limits. The Tenth Circuit affirmed the trial court's holding that Norman's annexation was proper, despite the objection of the owners of rural property. The rural owners objected to the annexation on the same grounds as Claremore objects here, that a narrow strip is insufficient to establish "contiguous" boundaries. The Tenth Circuit rejected the landowners' argument and held that the strip was "enough to meet the adjacent requirements."

¶ 11 The *Botsford* court relied on our opinion in *Sharp v. Oklahoma City,* 1937 OK 685 ¶¶ 19–20, 74 P.2d 383; there we held that the shape of annexed property is a political decision with which this Court will not interfere absent express statutory limitations relating to the shape of such property. Neither § 21–114 nor § 21–105 requires that the portion of a city or town that is "contiguous" (§ 21–114, note 2) or "adjacent and contiguous" (§ 21–105, note 1) to annexed property take any particular form or shape.

¶ 12 We held in *Sharp* "That the extent and shape which the annexed territory shall take is a political and not a judicial decision...." [Citations of California cases relied upon by the Court omitted.] We hold that the shape of the annexing municipality's existing boundaries is as much a political decision as is the shape of the annexed territory. Thus, the trial court's ruling that Verdigris' boundary was only fifty feet wide at the point of its adjacency or contiguity to the annexed property meant that the "conditions for annexation [did not] exist" under § 21–114(B), was erroneous.

¶ 13 The factors leading to our decision to decline to interfere with Verdigris' annexation here are even more compelling than they were in *Botsford* and *Town of Luther.* In both *Botsford* and *Town of Luther* the annexed property was annexed over the objection of its owners. Here, however, the owners of the property that Verdigris annexed, unanimously petitioned Verdigris to incorporate that property into Verdigris' town limits. But Claremore seeks to avoid both the will of the property owners and the political decision of Verdigris to annex the property. We hold that Claremore presented nothing in its motion for summary judgment to support any finding under § 21–114(B) other than "that the conditions for annexation exist." As it was undisputed that Verdigris' fifty foot strip was contiguous to the annexed property and that the property owners unanimously petitioned Verdigris for annexation, the record shows as a matter of

law "that the conditions for annexation exist[ed]."

II.

*The existence of the thirty foot wide unincorporated strip between Verdigris' fifty foot strip and Claremore's twenty foot strip did not serve to make Verdigris' corporate limits not "contiguous" to the annexed property.*

¶ 14 Claremore argues that the unincorporated thirty foot wide strip lying between Verdigris' strip and Claremore's strip means that Verdigris' boundary is not "contiguous to the other municipality except for the boundary," as that term is used in § 21–114(A)(2). Verdigris resists this argument by pointing out that 11 O.S.1991 § 21–102 provides,

Where any territory to be annexed is separated from the corporate limits of the municipality *only* by ... an intervening strip less than four (4) rods [66 feet] wide ... the territory shall be considered adjacent or contiguous to the municipality.

[Emphasis added.] Claremore contends that the word "only" in § 21–102 means that Verdigris' corporate limits were not adjacent or contiguous to the annexed property because § 21–114(A)(2) requires the annexed property to be "contiguous to the other municipality except for the boundary." Claremore posits from this that there are two intervening strips, the unincorporated strip and Claremore's strip, and that § 21–102 allows only one strip to be ignored in deciding whether corporate limits are "adjacent or contiguous" to the annexed property. We see nothing in § 21–102 to support Claremore's contention because Claremore's analysis fails to take into account that the two strips total only fifty feet in width, which is less than the sixty-six feet allowed by § 21–102. Further, we find nothing in § 21–102 that would support Claremore's claim that a strip of less than sixty-feet in width cannot be ignored for the purpose of determining contiguity if part of it is comprised of unincorporated land and part is land within Claremore's corporate limits.[4]

4. The trial court also rejected Claremore's argument on this issue on somewhat different grounds. The trial court held that the existence

of the unincorporated strip was irrelevant "because the statute [§ 21–114] requires only contiguity between the annexed property and the

## III.

*The requirement placed on the district court by § 21–114(B) to determine whether Claremore had "demonstrated a substantial governmental interest in the use of the property" unconstitutionally delegated to the courts the legislative power to determine whether Verdigris could annex the property.*

¶ 15 In ruling on Claremore's motion for summary judgment the trial court held that the "substantial governmental interest" clause of § 21–114 was "not currently before the court." The basis of the trial court's ruling was that, because it had held "the conditions for annexation" did not exist, it was unnecessary to address the constitutionality of the "substantial government interest" clause. But our determination "that the conditions for annexation exist[ed]" under § 21–114(B) requires us to examine the question whether the legislature may constitutionally delegate to the district court power to determine whether Claremore "demonstrated a substantial governmental interest in the use of the property." Verdigris' motion to dismiss was based in large part on its claim that § 21–114 unconstitutionally delegates to the courts legislative power. The trial court denied Verdigris' motion to dismiss without specifically addressing the constitutionality of § 21–114. Nevertheless, Verdigris raised the issue in its petition in error and the parties briefs on this issue are a part of the record before us.[5]

¶ 16 This Court addressed a similar issue when it declared unconstitutional 11 O.S.1981 § 21–107 (repealed 1984) in *Matter of De-Annexation of Certain Real Property*, 1983 OK 44 ¶ 11, 662 P.2d 1375, 1377.[6] There we held that § 21–107's delegation to the courts of the power to determine whether a particular annexation or de-annexation could be granted "without injustice to the inhabitants or persons interested" was unconstitutional. In so holding we said,

Whether property should or should not be annexed to or detached from the corporate limits of a municipality is purely legislative. Although the courts may determine whether a governing board has acted within the scope of its legislative authority and whether such action is reasonable or unreasonable, the courts may not determine whether a petition for annexation or detachment should be granted and can be granted without injustice to the inhabitants or persons interested. *That determination is purely legislative and the legislative enactment* (11 O.S.1981 § 21–107) *imposing such duty on the judiciary is unconstitutional and we so hold.*

[Emphasis added.]

¶ 17 The primary judicial function of the courts in annexation matters is to insure that the municipality has acted within the scope of legislative authority and that its actions have been reasonable. The question of what is or is not a "substantial government interest," however, is a political and not a judicial consideration. *Matter of De-Annexation* makes clear that the legislature may not delegate power to the courts to determine the conditions on which territory may or may not be annexed to municipalities because such determinations are purely legislative. Whether "a substantial governmental interest in the use of the property," as that term is used in § 21–114(B), is demonstrated is a political issue. Section 21–114 is, therefore, unconstitutional to the extent that it purports to impose a duty on the courts to make such determinations.

---

'other municipality.' The fence line [strip] boundaries of the respective municipalities need not be contiguous."

5. Claremore has moved for leave to submit an appellate brief. We deny that motion for the reason that all of the issues addressed in this opinion were briefed in the trial court. Thus, the positions of the parties on all relevant issues are already known to this Court. For that reason, we also deny Claremore's motion for oral argument.

6. Title 11 O.S.1981 § 21–107 provided:

If the district court finds that the request of the petitioners should be granted and can be granted without injustice to the inhabitants or persons interested, the court shall issue an order declaring annexation of the territory to the municipality. If the court finds against the petitioners, the petition shall be dismissed at the cost of the petitioners.

The legislature repealed the statute in 1984.

## IV.

*Verdigris is entitled to add the annexed property to its corporate limits despite Claremore's contention that the doctrine of estoppel should be held to prohibit Verdigris from doing so.*

¶ 18 Finally, Claremore claimed in its petition that Verdigris should be estopped from annexing the property at issue here. Our analysis of this issue reveals, as a matter of law, that Claremore has no right to claim that Verdigris' officials are estopped from carrying out the public rights and duties of the municipality they represent. In *State, ex rel. Cartwright v. Dunbar*, 1980 OK 15 ¶ 46, 618 P.2d 900, 911, lessees of public trust property objected when the county assessor sought to place the property on the tax rolls. The lessees claimed that the state should be estopped from taxing the property because it had not previously been placed on the tax rolls. This was because an attorney general's opinion (later superseded) had held the property not to be taxable. We rejected the lessees contention saying,

> It is contended the state is estopped from assessing these properties because of the reliance of "lessees of public trust properties" on the generally held view that such interests were exempt from taxation. Beyond the fact that the two lease agreements in issue specifically contemplate a change in the tax law, interpretation, and administration, which seems to belie any contention of reliance, *it is fundamental that a state and its subdivision cannot be estopped from protecting public rights when public officials have acted erroneously or failed to act. Layne-Western Co. v. City of Depew*, 1936 OK 462, 177 Okla. 338, 59 P.2d 269 (1936). Koehring and Chesterfield may not rely upon estoppel to defeat the imposition of taxes upon their taxable interests.

[Emphasis added.]

¶ 19 We followed *Dunbar* in *General Motors Corp. v. Oklahoma County Bd. of Equalization*, 1983 OK 59 ¶ 13, 678 P.2d 233, 236, saying,

> In *Dunbar* we also held that the State was not estopped from assessing the "lessee's" property because of its reliance on the generally held view that such interest was exempt from taxation. *Our holding was based on the principle that a state and its subdivision cannot be estopped from protecting public rights when public officials have acted erroneously or failed to act.*

[Emphasis added.] General Motors claimed that an agreement it had made with the state was enforceable. We rejected the contention, saying,

> Our decision in *Dunbar* is controlling in the case at bar and GMC's property is subject to ad valorem taxation unless the disputed tax abatement agreement is legally enforceable. The Federal Constitution does not protect unenforceable contract rights. *The disputed agreement, even if it could be established, is void because no public official or public agency could constitutionally grant the tax exemption allegedly contained in the agreement.* Since the alleged agreement is unenforceable, GMC is not entitled to the tax relief it sought.

[Emphasis added. 1983 OK 59 at ¶ 24, 678 P.2d at 237.]

¶ 20 Our opinions in *Dunbar* and *General Motors* leave no doubt that any agreement Verdigris officials might have made with Claremore to limit or eliminate Verdigris' exercise of its public power to annex land would have been void and unenforceable. Thus, Claremore's estoppel claim fails as a matter of law.

## SUMMARY

¶ 21 The fact that Verdigris' boundary was only fifty feet wide at the place where it joined the annexed property did not serve to make Verdigris' corporate limits non-contiguous to the annexed property. Nor did the existence of the thirty feet wide unincorporated strip between Verdigris' fifty foot strip and Claremore's twenty foot strip make the Verdigris corporate limits non-contiguous to the annexed property. Title 11 O.S.1991 § 21–114 is unconstitutional to the extent that it purports to delegate to the district courts the obligation to decide whether "a

substantial governmental interest in the use of the property" has been demonstrated. Such determinations are political, not judicial, and as such are beyond the constitutional power of the courts to decide. Finally, any agreement Verdigris officials might have made with Claremore to limit or eliminate Verdigris' exercise of its public power to annex land would have been void and unenforceable. Thus, Claremore's estoppel claim fails as a matter of law.

¶ 22 For the reasons expressed in this opinion the judgment of the trial court is reversed and the matter is remanded with instructions to dismiss Claremore's cause of action.

REVERSED AND REMANDED WITH INSTRUCTIONS.

HARGRAVE, C.J., WATT, V.C.J., LAVENDER, BOUDREAU, WINCHESTER, JJ.—concur.

OPALA, KAUGER, SUMMERS, JJ.— concur in part; dissent in part.

HODGES, J.—dissents.